UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/25/2022

GEORGE ORTIZ,

                           **Plaintiff,**

           -against-

**KILOLO KIJAKAZI,**

                           **Defendant.**

-----------------------------------------------------------------X

20-CV-05715 (AJN)(SN)

**REPORT AND RECOMMENDATION**

**SARAH NETBURN, United States Magistrate Judge.**

**TO THE HONORABLE ALISON J. NATHAN:**

     Plaintiff George Ortiz seeks judicial review of the final determination of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). 42 U.S.C. § 1383(c)(3). Ortiz moved, and the Commissioner cross-moved, for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. I recommend that the Plaintiff's motion be GRANTED and the Commissioner's motion be DENIED.

## BACKGROUND

     Ortiz was born on October 2, 1968. ECF No. 15, Administrative Record ("R.") 258. He completed up to the 10th or 11th Grade and has a GED. Id. at 263, 905. He completed some vocational training with the goal of becoming a computer technician. Id. at 263. He worked as a warehouse worker for five months in 2009, and previously worked as a manager in a mailroom and a copy clerk. Id. at 264. Ortiz reports that he was on the Worth Trade Center PATH train platform on September 11 and saw people jumping to their deaths when he exited the station. Id.

at 333. Ortiz later struggled with substance abuse, using heroin for roughly a year and a half before entering a methadone treatment program. See, e.g., id. at 1737. The Court further adopts the parties' recitation of Ortiz's medical and non-medical record evidence. See Plf. Br. at 2–22, Def. Br. at 2–5.

## I. Administrative Proceedings

Ortiz applied for Supplemental Security Income (SSI) on May 28, 2015. R. 243. He identified Post-Traumatic Stress Disorder (PTSD), bipolar disorder, poly-substance dependance, migraines, high blood pressure, diabetes and constipation as the medical conditions limiting his ability to work, initially identifying an onset date of December 1, 2009. Id. at 258, 262. After his application was denied he requested a hearing before an administrative law judge ("ALJ"). Id. at 119–123, 125. Ortiz initially appeared for a hearing before ALJ Paul Armstrong on August 3, 2017, where his attorney amended the onset date to February 19, 2015. Id. at 38, 42. The ALJ issued an unfavorable decision on November 27, 2017, but the Appeals Council remanded, directing the ALJ to "[g]ive further consideration to whether the claimant's impairments are medically determinable impairments that are 'severe'" and "[f]urther evaluate the treating and non-treating source opinions pursuant to the provisions of 20 CFR 404.1527 and non-examining source opinions in accordance with the provisions of 20 CFR 404.1527, and explain the weight given to such opinion evidence." Id. at 113, 115–116.

Following the remand, a new hearing was held before ALJ Anne Sharrard on April 18, 2019. Id. at 10, 25. Ortiz failed to appear, explaining in response to the Court's Notice to Show Cause that his cab was delayed by bad traffic. Id. at 10, 317. The Court proceeded with the hearing without Ortiz and heard testimony from vocational expert Mark Pinti. Id. at 10, 91–98.

The ALJ issued an unfavorable decision on July 31, 2019. Id. at 25. At the first step, the ALJ concluded that Ortiz had not engaged in substantial gainful activity since the date of his application. At the second step, the ALJ concluded that Ortiz suffers from the severe impairments of anxiety, opiate dependence in remission, bipolar disorder, cocaine abuse, persistent depressive disorder, and Post-Traumatic Stress Disorder (PTSD), and that these severe impairments limit his ability to perform basic work activities. Although she noted his additional diagnoses of hypertension, Type II diabetes, chronic kidney disease, vitamin D deficiency, asthma, renal cysts, headaches, onychomycosis, and mild obstructive airway disease, she reasoned that they are "controlled with medication, asymptomatic, or minimally symptomatic" and hence did "not significantly limit the claimant's physical or mental ability to do basic work activities." Id. at 13. She specifically cited to Dr. Narayan's treatment notes and the reports of the consultative examiners to support her conclusion that no symptoms were associated with his diagnoses of hypertension, diabetes, kidney disease, vitamin D deficiency, headaches, and migraines, and that at least some of these diagnoses were based on Ortiz's self-report rather than objective medical evidence. Although she acknowledged the June 2015 ultrasound that documented the renal cyst, she reasoned that the cyst did not appear to be related to any limiting symptoms. She reached similar conclusions regarding his onychomycosis, colon polyps, asthma, and mild obstructive airway disease. The ALJ also rejected Ortiz's argument that his chronic constipation and low back pain constitute severe impairments, arguing that there was no "medically acceptable clinical or laboratory diagnostic" evidence showing "the existence of a medical impairment that results from anatomical, physiological or psychological abnormalities," the diagnoses were based on self-reported symptoms, and back pain is not a medically determinable impairment. Id. at 15. She added that the constipation appeared to be a side-effect

of medication, and Ortiz had not consistently sought treatment, firing his gastroenterologist, failing to follow-up on referrals, and neglecting to take prescribed medication. Finally, the ALJ asserted that reports from the consultative examiners represent the primary evidence supporting Ortiz's claim of physical limitations, rejecting their opinions as inconsistent with both their examinations and the record as a whole.

At the third step, the ALJ determined that Ortiz's impairments did not meet or equal the criteria of listings 12.03[1], 12.04[2], 12.06[3], and 12.15[4]. Considering each of the paragraph B criteria, she concluded that Ortiz has only moderate limitations in each area of mental

---

[1] Listing 12.03 applies to schizophrenia, schizoaffective disorder, delusional disorder, and psychotic disorder due to another medical condition. 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.00 (B)(2). To satisfy the listing for schizophrenia and other psychotic disorders, the claimant must provide medical documentation of one or more of the following symptoms: (1) delusions or hallucinations, (2) disorganized thinking (speech), or (3) grossly disorganized behavior or catatonia. 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.03. In addition, a plaintiff must show either "extreme limitation of one, or marked limitation of two, of the following areas of mental functioning; (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; (4) Adapt or manage oneself" or that their mental disorder is "serious and persistent." Id.

[2] Listing 12.04 applies to depressive, bipolar and related disorder, including major depressive disorder. 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.00 (B)(3). To satisfy the listing for depressive disorder, a plaintiff must provide medical documentation of five of the following symptoms: (1) depressed mood; (2) diminished interest in almost all activities; (3) appetite disturbance with change in weight; (4) sleep disturbance; (5) observable psychomotor agitation or retardation; (6) decreased energy; (7) feelings of guilt or worthlessness; (8) difficult concentrating or thinking; or (9) thoughts of death or suicide. 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.04. In addition, a plaintiff must show either "extreme limitation of one, or marked limitation of two, of the following areas of mental functioning; (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; (4) Adapt or manage oneself" or that their mental disorder is "serious and persistent." Id.

[3] Listing 12.06 applies to anxiety and obsessive-compulsive disorders, including generalized anxiety disorder. 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.00 (B)(5). To satisfy the listing for anxiety, a plaintiff must provide medical documentation of three of the following symptoms: (1) restlessness; (2) fatigue; (3) difficulty concentrating; (4) difficulty concentrating; (5) irritability; (6) muscle tension; or (7) sleep disturbance. 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.06. In addition, a plaintiff must show either "extreme limitation of one, or marked limitation of two, of the following areas of mental functioning; (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; (4) Adapt or manage oneself" or that their mental disorder is "serious and persistent." Id.

[4] Listing 12.15 includes post-traumatic stress disorder and other specified trauma and stressor-related disorders. 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.00 (B)(11). To satisfy the listing, the claimant must provide medical documentation of all of the following: (1) exposure to actual or threatened death, serious injury, or violence; (2) subsequent involuntary re-experiencing of the traumatic event; (3) avoidance of external reminders of the event; (4) disturbance in mood and behavior; and (5) increases in arousal and reactivity. 20 C.F.R. Pt. 404, subpt. P, app'x 1 § 12.15. In addition, a plaintiff must show either "extreme limitation of one, or marked limitation of two, of the following areas of mental functioning; (1) Understand, remember, or apply information; (2) Interact with others; (3) Concentrate, persist, or maintain pace; (4) Adapt or manage oneself" or that their mental disorder is "serious and persistent." Id.

functioning. Although she noted that interacting with others represented Ortiz's "most significant area of limitation," she reasoned that the "evidence shows, at most, anger issues, low frustration tolerance, and … that the claimant can be argumentative and irritable." Id. at 17. While acknowledging that "post-hearing evidence from Dr. Wood does show some difficulty keeping appointments and occasionally a shortened attention span," she determined that limiting Ortiz "to simple and routine instructions in a low stress job" addressed any limitation in concentrating, persisting, or maintaining pace. Id. She also concluded that Ortiz did not meet any of the paragraph C criteria.

Before reaching step four, the ALJ found that Ortiz has the residual functional capacity to perform a full range of work at all exertional levels, adding the non-exertional limitation that Ortiz can carry out simple and routine instructions in a low stress job, defined as having only occasional changes in the work setting and only occasional decision making required. In addition, she limited social interaction to occasional interaction with supervisors, occasional brief and superficial interaction with coworkers, and no interaction or contact with the general public. Id. at 18. Although she acknowledged that "it is undeniable that claimant has psychological impairments," she concluded that "the evidence simply does not support a level of severity that would render him completely and totally unable to work." Id. at 20. She gave great weight to Dr. Kamin's and Dr. Tedoff's medical opinion, some weight to Dr. Revan's consultative assessment, and no weight to Agunloye's and Dr. Fkiaras's statements regarding Ortiz's capacity to work. While she gave great weight to Dr. Woods' statements regarding Ortiz's ability to handle work stress, she rejected his opinions regarding Ortiz's physical limitations as inconsistent with his treatment notes. She did not explicitly consider the FEGs biopsychosocial evaluations included in the record.

At the fifth step, the ALJ concluded that considering Ortiz's age, education, work experience, and residual functional capacity, he can perform jobs that exist in significant numbers in the national economy, including warehouse worker, industrial cleaner, and floor waxer.

On May 27, 2020, the Appeals Council denied Ortiz's request for review, making the ALJ's decision final. Id. at 1.

## II. Ortiz's Civil Case

Ortiz filed his Complaint on July 23, 2020. ECF No. 1. He requests that the Court set aside the decision and grant him monthly maximum insurance and/or SSI benefits, or alternatively, remand his case for reconsideration of the evidence. Id. at 3. The Commissioner answered by filing the administrative record, and the parties cross-moved for judgment on the pleadings. ECF Nos. 15, 20 & 22.

Ortiz argues that the ALJ's determination of his residual functional capacity ("RFC") was not supported by substantial evidence, she improperly weighed the medical opinion of his treating physician and one consultative examiner and substituted her own judgment for those of the physicians, her RFC determination was not consistent with her finding that Ortiz had moderate limitations in concentrating, persisting, or maintaining pace, and she failed to afford him a full and fair hearing. See ECF No. 21. The Commissioner counters that the ALJ's decision is supported by substantial evidence and should be affirmed. ECF No. 23, at 1.

## LEGAL STANDARD

## I. Standard of Review

In reviewing a decision of the Commissioner, a court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the

Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). An ALJ's determination may be set aside "only where it is based upon legal error or it is not supported by substantial evidence." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cr. 1998)).

"Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The Commissioner's findings as to any fact supported by substantial evidence are conclusive. Diaz v. Shalala, 59 F.3d 307, 312 (2d Cir. 1995); see also Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder."). Although deferential to an ALJ's findings, a disability determination must be reversed or remanded if it contains legal error or is not supported by "substantial evidence." See Rosa, 168 F.3d at 77.

## II. Definition of Disability

A claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. § 1382c(a)(3)(D). A claimant will be found to be disabled only if his "impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." Id. § 1382c(a)(3)(B).

An ALJ must proceed through a five-step process to make a disability determination. See 20 C.F.R. § 416.920(a)(4). The steps are followed in order; if it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not progress to the next step. The Court of Appeals has described the process as follows:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Jasinski v. Barnhart, 341 F.3d 182, 183–84 (2d Cir. 2003) (quoting Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999)).

A claimant bears the burden of proof at steps one, two, three, and four; the Commissioner bears the burden at step five. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (citation omitted).

## ANALYSIS

Ortiz argues that the ALJ improperly weighed Dr. Woods's medical opinion regarding his physical impairments, her conclusion that he retained the RFC to do work at all exertional levels was not supported by substantial evidence, her assessment of his non-exertional limitations was inconsistent with medical opinions in the record, and she failed to account for the side effects of his medications. He further contends that her RFC finding was inconsistent with

her finding of moderate limitations in concentration, persistence and pace, and failed to address the vocational expert's testimony that being off task more than 10% of the time or absent more than once a month would preclude all jobs. Finally, he argues that the ALJ failed to afford him a full and fair hearing. The Commissioner responds that both the ALJ's findings at step two and her physical and mental RFC findings and her finding were supported by substantial evidence, and she properly determined that Ortiz failed to show good cause for missing the hearing.

## I. Legal Error

Ortiz had the right to be present at his hearing. 20 C.F.R. § 416.1450(a). Under the Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX"), that right may be denied if a claimant fails to appear at his hearing without good cause. HALLEX I-2-4-25(A)(1), HALLEX I-2-4-25(C)(2). Good cause generally exists "when an unforeseeable event occurred that prevented the claimant from notifying the ALJ and requesting a postponement in enough time before the scheduled hearing." HALLEX I-2-4-25(C)(1)(b). In determining whether good cause exists, the ALJ *must* "consider any physical, mental, educational, or linguistic limitations … which a plaintiff may have." 20. C.F.R. § 416.1457(b)(2); see also HALLEX I-2-4-25(B).

Ortiz did not appear and so the ALJ conducted a 14-minute hearing without him. R. 10. Later, in response to a Notice to Show Cause, Ortiz wrote that:

> [B]ecause of unforeseen problems Beyond My Control I took a cab from my home to the address downtown in order to make this meeting however because of bad traffic I was delayed by a half hour. I apologize for not being there on time and therefore respectfully I'm asking for later date so that I may be seen and give my side story and continue this inquiry …

Id. The ALJ rejected this excuse, finding that Ortiz did "not explain what the problems beyond his control actually were." Id.

There is limited case law on when a claimant has established good cause to excuse his failure to appear. Neither party cites any cases. Courts have found no good cause when a claimant failed to appear due to lack of transportation, Carpenter v. Colvin, No. 5:13-cv-859 (GLS), 2014 WL 4637085, at *3 (N.D.N.Y. Sept. 16, 2014), or for possessing alcohol when the claimant arrived at the hearing location and was denied admission. Coe v. Saul, No. 19-cv-10993 (PED), 2020 WL 6729169, at *8 (S.D.N.Y. Nov. 16, 2020). In both cases, the proffered reasons were within the control of the claimant. By contrast, Ortiz failed to appear because of an external factor: traffic.

I recommend that the Court find that the ALJ committed legal error when she found no good cause for Ortiz's failure to appear and conducted the proceeding without him. First, in determining whether a claimant has good cause for the failure, the regulations require the ALJ to "consider any physical, mental, educational, or linguistic limitations." The ALJ considered none of Ortiz's limitations despite substantial evidence in the record that Ortiz has difficulty attending medical appointments and maintaining his care due to his mental health impairments. R. 1649, 1908, 2002, 2056. The failure to even acknowledge Ortiz's mental health limitations is grounds for remand. Wayne I. v. Saul, No. 5:19-cv-709 (NAM), 2020 WL 3566626, at *6 (N.D.N.Y. July 1, 2020) (remanding where the ALJ did not consider plaintiff's mental limitations in determining whether plaintiff had good cause not to appear at the hearing); Saephan v. Barnhart, No. C 01-02660 (SI), 2003 WL 22309450, at *5 (N.D. Cal. Oct.1, 2003) ("The Court remands this case for consideration by the Commissioner of whether the plaintiff had good cause for failure to appear at the hearing.")

Second, the ALJ did not adequately explain why she found no good cause, stating only that Ortiz "does not explain what the problems beyond his control actually were." R. 10. But

Ortiz stated that he faced "bad traffic" and was "delayed by half an hour." Certainly traffic – potentially caused by a car accident or unexpected road work – could be an unforeseeable event beyond his control. The hearing transcript reflects that the hearing adjourned at 11:30, meaning it would have closed just as he arrived. Id. at 98. Indeed, in his brief, Ortiz's counsel states that the hearing was completed "before Mr. Ortiz's arrival," suggesting that he *did* appear. See Plf. Br. at 1. Additionally, during the hearing, Ortiz's lawyer told the ALJ that he saw Ortiz a few days earlier, and that Ortiz was aware of the hearing and planned to attend. R. 88.

Finally, the error is not harmless. The hearing before the ALJ was Ortiz's second, after his case was remanded by the Appeals Council for a more searching review of his records. Because the ALJ found that Ortiz's limitations in interacting with others "is the claimant's most significant area of limitation," Id. at 17, Ortiz was entitled to appear before the ALJ and describe his disability in his own words. Ortiz's presentation may well have changed the outcome of his disability claim. See Johnson v. Bowen, 817 F.2d 983, 986–87 (2d Cir. 1987). Accordingly, I recommend that the Court find that this error was not harmless, and that remand is appropriate.

## II.     Substantial Evidence

In the alternative (or additionally), the Court should remand this matter because the ALJ's decision is not supported by substantial evidence. Although the ALJ's findings as to any fact supported by substantial evidence are conclusive, the RFC determination must consider "the combined effect of the claimant's impairments" and "be based on *all* of the relevant evidence in the case record," including "the effects of treatment . . . limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication)." Higgins v. Berryhill, No. 17-cv-5747 (OTW), 2018 WL 6191042, at *26 (S.D.N.Y. Nov. 28, 2018) (citations omitted). If the ALJ's ruling is supported only by a paucity

of evidence, and there is substantial evidence to support the claimant's position, remand is warranted. Selian, 708 F.3d at 421 (rejecting RFC determination based solely on single, vague statement of medical opinion); Balsamo, 142 F.3d at 81 (finding that RFC determination was not supported by substantial evidence where it was not supported by any medical opinion evidence in the record).

The ALJ's RFC determination was not supported by substantial evidence. The record is replete with evidence of Ortiz's significant mental limitations that would meaningfully interfere with his ability to work, particularly his difficulties with social functioning. As early as October 2014, a FEGs examiner found that Ortiz had "severe social phobia." R. 545. He reported regular dissociative episodes, hallucinations, and homicidal ideations to both his therapist Natalie Agunloye and his physicians at Montefiore and admitted to reacting violently when he felt threatened. Id. at 911, 916, 1182, 1187, 1193, 1198, 1204–06, 1225, 1227, 1229, 1641, 1662, 2002, 2031. On two occasions, he appeared at his monthly doctor's appointment with a knife strapped to his belt. Id. 1908, 2002. He claimed to have an alternate personality with a "short fuse" who was "more willing to argue and fight" and presented as his alter ego at appointments. Id. at 1198, 1214, 1225. Dr. Eric Woods, his primary care physician at Montefiore, proposed that Ortiz consider psychiatric hospitalization on two separate occasions, noting that he believed it was necessary to stabilize his symptoms, which he characterized as "increasingly erratic and dangerous." Id. at 1662, 2086. Ortiz reported that he struggled to keep his medical appointments in part because of his social anxiety: he refused a referral to one mental health care provider because of the large waiting room. Id. at 1649, 1908, 2002, 2083.

While the ALJ acknowledged these symptoms and incorporated minimal social limitations into the RFC determination, she states that Ortiz's mental examinations were

"routinely unremarkable." In support of this contention, she describes Ortiz's therapy records and treatment notes as demonstrating "normal memory, cognitive functioning and orientation" despite "ongoing anxiety and depression [and] occasional reports of auditory hallucinations." The ALJ points to a note from his Montefiore treating records stating that Ortiz did "not appear to be depressive." During his time in therapy, he occasionally presented with no evidence of depression or denied psychotic symptoms. R.1179, 1191, 1208, 1221.

"Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances [the Court of Appeals has found that] it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Estrella v. Berryhill, 925 F.3d 90, 97 (2d Cir. 2019) (quoting Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014)). The ALJ's reliance on discrete examples of improvement to support her RFC determination constitutes impermissible "cherry picking." See Artinian v. Berryhill, No. 16-cv-4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018) ("Federal courts reviewing administrative social security decisions decry 'cherry picking' of . . . evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source."); see also Strange v. Comm'r of Soc. Sec., No. 6:13-cv-527 (GLS)(ESH), 2014 WL 4637093, at *9 (N.D.N.Y. Sept. 16, 2014) ("'Cherry picked' decisions do not satisfy substantial evidence standards because reviewing courts cannot conclude, under such circumstances, that adverse findings were based on evidence reasonable minds might accept as adequate to support a conclusion."). The ALJ's reference to a note that Ortiz did not appear to be depressive is particularly revealing: the doctor who made it did not deny that Ortiz struggled with mental health, but rather wrote that "anxiety and personality

13

[disorder]" were more likely. R. 1603. Moreover, the treatment notes written by his therapist during the same period record Ortiz's reports of the "signs and symptoms of psychotic process," as well as symptoms of depression, anxiety, and PTSD. R. 1214, 1224.

The ALJ also cited to Dr. Howard Tedoff's consultative examination in support of her RFC determination. However, Dr. Tedoff stated that Ortiz was "not relating adequately with others outside of his family and could not effectively deal with workplace stress at this time," concluding that "[t]he prognosis for Mr. Ortiz returning to the workplace at this point in his life is guarded at best." R. 775; see also id. ("The results of the examination are consistent with psychiatric and physical problems and in combination these have interfered with the claimant's ability to function in the workplace."). The ALJ failed to fully incorporate Dr. Tedoff's assessment of Ortiz's social functioning into the RFC, limiting him only to a "low stress" job with "occasional contact" with supervisors and co-workers. See Jackson v. Comm'r of Soc. Sec., No. 16-cv-6183 (KAM), 2019 WL 7283518, at *7 (E.D.N.Y. Dec. 27, 2019) (despite affording examining physician's opinion "great weight" the ALJ failed to incorporate opinion that claimant only capable of brief and superficial contact with others in her RFC determination, instead finding claimant capable of "occasional contact").

Furthermore, the ALJ's conclusion that Ortiz could perform a full range of work at all exertional levels is not supported by substantial evidence. As Ortiz points out, "all exertional levels" includes "medium as well as heavy and very heavy exertional work," all of which requires the capacity to lift 25 pounds or more. This determination ignores Ortiz's well-documented history of back pain. He regularly complained of lower back pain to his physicians at Montefiore. Id. at 1032, 1557, 1570, 1618, 1664, 1826, 1908, 1932, 1950, 2007. At his physical examinations, Dr. Woods noted that Ortiz exhibited "significant tenderness to palpation

. . . in the right lumbar area up to the mid-back." Id. at 1620, 1666. The Montefiore treatment notes also extensively document Mr. Ortiz's chronic constipation. Ortiz complained of chronic constipation and abdominal pain at more than twenty appointments, telling his physicians that he only had two bowel movements a month and that his constipation made it difficult for him to walk. Id. at 348, 364, 848, 857, 869, 903, 928, 1166, 1589, 1620–21, 1662, 1690, 1718, 1778–79, 1800, 1826, 1877, 1908, 1950, 2003, 2087, 2127. The constipation was likely caused by suboxone. Id. at 871, 1008, 1690. Dr. Woods hypothesized that Ortiz's back pain may have been related to his constipation, or that it could be a "disk problem." Id. at 1912. He repeated this opinion in November 2018, noting that Ortiz's chronic constipation was "difficult to disentangle" from his back pain. Id. at 2007. Both of the physicians who performed consultative examinations determined that Ortiz's range of movement was limited and opined that Ortiz had exertional limitations. Id. at 769–70 (Dr. Revan assessed "[m]ild limitation with laying and sitting due to back pain"; "[m]ild limitations with lying down due to back pain"; "[m]ild-to-moderate limitation with personal grooming and activities of daily living secondary to back pain"), 1263–64, 1266 (Dr. Fkiaras assessed "moderate to marked limitation for any repetitive heavy lifting, carrying, pushing, and pulling"; "mild to moderate limitation walking"; "moderate to marked limitation for repetitive squatting and bending"; Ortiz could "never" lift or carry more than 10 pounds). Dr. Woods and evaluators from the FEGS program also concluded that Ortiz had limitations with sitting, standing, lifting, pushing, pulling, kneeling, and squatting. Id. at 1274–77, 541–43.

Despite this, the ALJ dismissed the assessments of the consultative examiners and Dr. Woods, giving their opinions regarding Ortiz's physical limitations little or no weight on the grounds that they were not consistent with their physical examinations and other evidence in the

record.[5] Instead, she gave "great weight" only to the evaluation performed by Dr. E. Kamin, a Disability Determination consultant who reviewed Ortiz's medical records in August 2015. This was error. Not only did Dr. Kamin not conduct an examination of Ortiz, but he also did not review the complete record before the ALJ. See Gunter v. Comm'r of Soc. Sec., 361 F. App'x 197, 200 (2d Cir. 2010).

As a result, not a single medical opinion from an examining physician supported the ALJ's RFC determination. No medical provider opined that Ortiz could lift more than 20 pounds. R. 541, 598, 1266, 1276. As such, the ALJ's assessment fundamental reflects *her* opinion, not the opinion of medical experts. "While an ALJ is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." Balsamo, 142 F.3d at 81 (citation omitted).

Lastly, despite extensive documentation of Ortiz's chronic constipation in the record, the ALJ failed to explicitly consider its effect on his ability to work in her RFC analysis. As such, she failed to consider all the evidence in reaching her RFC determination. Higgins, 2018 WL 6191042, at *26. Although the Commissioner argues that the ALJ properly determined that the constipation was not a medically determinable impairment, the ALJ was still required to factor

---

[5] The ALJ also failed to follow the regulations regarding the opinion evidence of a treating physician. Although an ALJ may reject the opinion of a treating physician if the opinion is inconsistent with the record, the ALJ must give "good reasons" to do so. 20 C.F.R. § 416.927(c)(2); see also Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999) (reasoning that declining to give treating physician's opinion controlling weight "does not exempt administrative decision makers from their obligation . . . to explain why a treating physician's opinions are not being credited"). That requires the ALJ to consider: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by medical evidence, particularly medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) whether or not the physician is a specialist; and (6) other factors that tend to support or contradict the medical evidence. 20 C.F.R. § 416.927(c); see also Ferraro v. Saul, 806 F. App'x 13, 14–16 (2d Cir. 2020). The ALJ noted only that she gave "varying weight" to Dr. Woods's opinion but failed to support her decision not to give controlling weight.

this evidence into her RFC determination. Furthermore, remand is appropriate where, as here, the ALJ neglected to consider evidence of medication side effects in the RFC analysis. Arias v. Astrue, No. 11-cv-1614 (TPG), 2012 WL 6705873, at *3–4 (S.D.N.Y. Dec. 21, 2012); Stella v. Comm'r of Soc. Sec., No. 19-cv-01751 (FB), 2020 WL 5369057, at *2 (E.D.N.Y. Sept. 8, 2020) ("Social Security Rule 16-3p specifically requires proper consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms").

I conclude that the ALJ's RFC determination was not supported by substantial evidence and recommend that Ortiz's application also be remanded on this ground.

## CONCLUSION

I recommend that the Court GRANT the Plaintiff's motion and DENY the Commissioner's motion, remanding the matter for additional proceedings in accordance with this Recommendation.

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   January 25, 2022
         New York, New York

\*          \*          \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS
TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen days after

being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Alison J. Nathan at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Nathan. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).